# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| DONALD BRIAN HAVEY, | ) |
| --- | --- |
| Movant, | ) |
| v. | ) No. 4:17-CV-00852 JAR |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Movant Donald Havey's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, as amended. (Doc. No. 1). The motion is fully briefed and ready for disposition. For the following reasons, Havey's motion is denied.[1]

### I. Background

On October 22, 2015, Havey waived indictment and pled guilty to one felony count of executing a healthcare fraud scheme in violation of 18 U.S.C. § 1347(a)(1). At his plea hearing (Case No. 4:15CR00483, Plea Transcript, Doc. No. 44 at 16-18; Plea Agreement, Doc. No. 5 at 6-9), Havey acknowledged, under oath, that the following facts were true and correct:

At all relevant times, Havey was a licensed doctor of chiropractic medicine in the state of Missouri. Havey owned and operated companies that sold orthotic devices in Missouri, namely Spinal Decompression of Chesterfield; Senior Care, Inc.; Advanced Custom Orthotics, Inc.; and Missouri Custom Orthotics; and in Illinois, namely Midwest Illinois Orthotics, LLC (referred to

---

[1] Because Havey's motion can be conclusively determined based on the motion, files and records of the case, an evidentiary hearing need not be held. See Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994).

1

collectively as "Companies"). The Companies were principally engaged in providing durable medical equipment (DME) to the public, including Medicare Part B beneficiaries.

Between 2009 and 2014, Havey executed and attempted to execute a scheme to defraud Medicare, Medicaid, other public and private health insurance companies, and patients by creating and using false documents, including false and fraudulent reimbursement claims, related to ankle-foot orthotics. Havey marketed a "Fall Prevention Program" ("Program") to nursing homes, claiming it would reduce falls by almost 20% and improve the patients' quality of life. Havey, and others acting at his direction, deliberately concealed from the nursing homes that the real purpose of the Program was to sell orthotic boots to their patients. Havey, and others acting at his direction, told the nursing homes that there would be little or no cost to patients, when he knew that a Medicare patient could be charged as much as $500.00, if the patient did not have supplemental insurance. Havey created several websites to market the Program. One website in particular, www.seniorcareinc.net, stated that patients would incur little or no cost if they participated in the Program.

Havey employed chiropractors in Missouri and other states, including Texas, Alabama, California, Georgia, Illinois, Kentucky, Massachusetts, Mississippi, Oklahoma, Rhode Island, and Tennessee, to market the Program and sell orthotic boots. He created a document entitled "Senior Care, Inc. Fall Prevention Program Training Manual and Handbook" ("Training Manual"), which provided detailed instructions on how to implement the Program. The document contained a number of misleading and false statements to induce others to implement the Program.

The Training Manual clearly displays Havey's knowledge and understanding of Medicare reimbursement. Specifically with respect to reimbursement, Havey states in the Training Manual that Medicare Part B patients would be preferred and targeted because Medicare does not require

2

pre-authorization, usually has a higher allowable/payable amount than commercial or HMO policies, and usually pays within 14-21 days from the day the claim is received. Further, Havey stated in the Training Manual that Medicare has a set allowable amount for the product so the provider knows how much reimbursement to expect each time. In addition, Medicare pays 80% of the allowable, with the remaining 20% paid by secondary insurance or Medicaid if the resident has the additional benefits on their policy.

Havey further stated in the Training Manual that Medicare required the DME provider to deliver the product to the patient before submitting a reimbursement claim to Medicare. Nonetheless, he knowingly submitted and caused to be submitted reimbursement claims before the orthotic boots were delivered to patients.

Knowing that that Medicare would scrutinize any company that submitted claims for large numbers of expensive orthotic boots, Havey submitted claims through several of the Companies, although there was no business reason for submitting claims in this manner. For example, a representative of Havey assessed and ordered orthotics for five Medicare patients residing in the same facility on the same day. Two of the residents' claims were submitted to Medicare using Advanced Custom Orthotics as the supplier and the other three were submitted to Medicare using Senior Care Orthotics as the supplier.

Healthcare Common Procedure Coding System ("HCPCS") is a standardized coding system used to identify certain supplies, services, and products, such as DME products provided to patients. Havey included on reimbursement claims a combination of HCPCS codes that did not describe the orthotic boots actually provided to the patients.

On or about September 27, 2011, in the Eastern District of Missouri, Havey knowingly and willfully executed and attempted to execute the above described scheme and artifice to defraud a

3

health care benefit program, in connection with the delivery and payment for health benefits, items, and services, by causing the submission of a false and fraudulent reimbursement claim to Medicare for orthotic boots provided to Patient A. W.

At various times during the above described scheme, Havey requested that administrative law judges review and overturn the decisions of Medicare contractors who had denied his reimbursement claims. During these hearings, Havey knowingly and willfully presented false documents and made false statements to support the claims. During the investigation of the above described offense, Havey knowingly and willfully produced, in response to a federal subpoena, bogus documents that he created to conceal the fraud scheme. Havey signed the names of other chiropractors on some of the bogus documents. The parties stipulated to a loss of $2,276,221.00.

The transcript of the plea hearing reflects that the Court closely examined Havey regarding the voluntariness of his plea, and reflects a plea that was entered "freely, voluntarily, and intelligently, with a full understanding of the charges and the consequences of the pleas, with an understanding of his rights attending a jury trial, [and] the effect of the pleas of guilty on those rights." (Plea Tr. at 28).

Havey waived his right to appeal all non-jurisdictional, non-sentencing issues (Plea Tr. at 23-24) and further waived his right to contest his sentence or conviction in a post-conviction proceeding, except for claims of prosecutorial misconduct or ineffective assistance of counsel. (Plea Agreement at 24-25).

On March 2, 2016, the Court sentenced Havey to a term of imprisonment of 51 months for the crime of health care fraud, followed by supervised release for a term of three years. Restitution in the amount of $2,276,220.95 was also ordered. No direct appeal was filed.

On March 6, 2017, Havey filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence raising three grounds for relief:

1. "Counsel rendered ineffective assistance by failing to investigate and challenge defendant's self-incrimination, warrant, arrest and Miranda warning." (Doc. No. 1-1 at 14). "Counsel failed to subject the illegally obtained information to a suppression hearing, but instead, enticed the defendant into a plea agreement." (Doc. No. 1 at 4).

2. Counsel was ineffective for failing to subject the Government's alleged "actual loss" to an adversarial test. (Doc. No. 1 at 5). "Counsel rendered ineffective assistance in failing to demand accounting to accurately reflect the actual loss when reaching specific offense characteristics that would ultimately increase the offense level by 16 levels ... as well as other sentencing enhancements." (Doc. No. 1-1 at 14).

3. The Government failed to provide the accurate accounting for restitution, showing there was no such "loss amount" as alleged. (Doc. No. 1 at 7). "The restitution loss amount is incorrect as determined under the sentencing guidelines manual § 2B1.1(b)(1)." (Doc. No. 1-1 at 14).

## II.     Standard for ineffective assistance of counsel

It is well-established that a petitioner's ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal. United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006); United States v. Cordy, 560 F.3d 808, 817 (8th Cir. 2009). The burden of demonstrating ineffective assistance of counsel is on a defendant. United States v. Cronic, 466 U.S. 648, 658 (1984); United States v. White, 341 F.3d 673, 678 (8th Cir. 2003). To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his attorney's performance "fell below an objective standard of reasonableness" and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687–88 (1984). There exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable

assistance. Id. at 689. In order to show prejudice, Havey must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The failure to show prejudice is dispositive and courts need not address the reasonableness of counsel's performance in the absence of prejudice. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

The first prong of the Strickland test, that of attorney competence, is applied in the same manner to guilty pleas as it is to trial convictions. The prejudice prong, however, is different in the context of guilty pleas. Instead of merely showing that the result would be different, the defendant who has pled guilty must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Matthews v. United States, 114 F.3d 112, 114 (8th Cir. 1997).

### III. Discussion

#### Ground One

In his first ground for relief, Havey alleges his counsel was ineffective for failing to investigate and challenge the warrant or arrest and whether or not he was Mirandized, and for failing to file a motion to suppress illegally obtained information.

If a defendant is in custody and being interrogated, he must be advised of his right not to answer questions and to have an attorney present during questioning before any of his statements are admissible in evidence. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Citing to the affidavit submitted by Havey's counsel, the Government responds that although Havey had several contacts with federal law enforcement related to the healthcare fraud scheme to which he pled guilty, he was never in custody or questioned by law enforcement on those occasions. (Doc. No. 6 at 6). In

6

his affidavit, Havey's counsel attests to having obtained Havey's files from his prior counsel and familiarizing himself with the facts of his case (Affidavit of Paul J. D'Agrosa (D'Agrosa Aff.), Doc. No. 6-1 at 4), which would necessarily include the fact that Havey was never detained or interrogated by federal agents. Havey was not present at subsequent meetings between his counsel and the prosecutor and federal agents to discuss the Government's evidence against Havey and Havey's defenses to the alleged fraud. (D'Agrosa Aff. at 2-3).

Furthermore, Havey fails to identify any information or statement that the Government obtained in violation of his rights and subsequently used against him. In the absence of objective evidence of illegally obtained statements or information, Havey's counsel had no basis for filing a motion to suppress. Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994) (counsel's failure to advance a meritless argument cannot constitute ineffective assistance). In fact, during the plea hearing, Havey expressly waived his right to file pretrial motions, including motions to suppress statements, and reiterated that he wanted to enter a plea of guilty pursuant to the plea agreement. (Plea Tr. at 9-10).

In addition, Havey's claim of ineffective assistance of counsel is belied by his sworn testimony acknowledging to the Court at both the plea and sentencing hearings that he was satisfied with his counsel:

> Q: And he has discussed all these different aspects with you, is that correct?
> A: In detail, yes.
> Q: And has he done everything you have asked him to do in this case?
> A: Yes, he has.
> Q: And do you believe you have been fully advised as to all aspects of your case, including your legal rights, and the possible consequences of your plea of guilty here today?

(Plea Tr. at 10). At the sentencing hearing, the Court again questioned Havey about his counsel's representation:

7

> Q: I just want to ask you again with regard to his representation. I just want to ask you briefly today, have you had enough time to talk to him about your case?
> A: I have, sir.
> Q: And has he answered all your questions?
> A: Very well, sir.
> Q: And has he done everything that you asked him to do in this case?
> A: He has.
> Q: You are satisfied with his services; is that correct?
> A: Very much so.

(Sentencing Transcript, Case No. 4:15CR00483, Doc. No. 41 at 3-4).

Havey has failed to establish that he is entitled to relief on either a stand-alone Miranda claim or as a challenge to counsel's performance. See Rose v. United States, No. 4:05-CV-574 (CEJ), 2008 WL 3982070, at *2 (E.D. Mo. Aug. 25, 2008). This claim is therefore denied.

**Ground Two**

Next, Havey alleges his counsel was ineffective for failing to challenge the loss amount of $2,276,221.95. In response, the Government argues that over a period of months, Havey's counsel took reasonable steps to investigate and challenge the Government's estimate of the loss amount and to negotiate a lower number. (Doc. No. 6 at 9). The Government also notes that after it agreed to a $200,000 reduction in the loss amount, Havey stipulated to the loss amount at his plea hearing (Pls Tr. at 18; Plea Ageement at 10 ¶ 6(a)(2) ("The parties stipulate to loss of $2,276,221.")), and did not object when the Court informed him that 16 levels would be added to his offense level calculation based on the loss amount (Plea Tr. at 21).

In his affidavit, Havey's counsel acknowledges that the amount of loss was always a contentious issue in the case and that "[a]fter many meetings and months of negotiations, a loss amount was agreed to in order to avoid a multi-count indictment and to avoid a felony indictment

8

of Ms. Reno" (Havey's fiancée at the time). (D'Agrosa Aff. at 5). According to counsel, the compromise was worked out with Dr. Havey's full knowledge:

> Contrary to [Havey's] assertion, [counsel] fully investigated all avenues and advocated continuously for a lower loss amount. In the end, it was either the lack of records or the falsity of some of the records that undermined our position. I had been instructed from the beginning to make the best possible deal and not to take the posture that the case would proceed to trial. Although I was able to undermine some of the government's case, it was clear that Dr. Havey was an outlier in the realm of custom orthotics. The witnesses were not supporting his position and he undermined his own position by falsifying records.

(Id.).

It is well established under Strickland that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable ..." Hall v. Luebbers, 296 F.3d 685, 693 (8th Cir. 2002) (quoting Strickland, 466 U.S. at 690). Here, Havey's counsel made a strategic decision, based on the facts and circumstances of the case, to accept the stipulated loss amount, rather than contest the amount at the sentencing hearing. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; the Court does not "second guess" strategic decisions. Anderson, 393 F. 3d at 753. This claim is denied.

### Ground Three

Lastly, Havey alleges the Government failed to provide an accurate accounting for restitution, thereby failing to prove a loss amount of $2,276,220.95.[2] As discussed above, the parties stipulated in the plea agreement and Havey confirmed during the plea hearing that the

---

[2] Havey contends the total loss should be reduced from $2,276,220.95 to $15,924.85.

loss amount was $2,276,221.95. Havey also agreed to the entry of a money judgment against him in favor of the Government in that amount.

To the extent Havey is claiming his counsel was ineffective in challenging the loss amount, that claim is denied, for the reasons discussed above. To the extent Havey is alleging ineffective assistance of counsel regarding the restitution order, such a claim is not cognizable under § 2255. "Because a dispute about restitution does not involve a claim of a right to be released from custody, a prisoner cannot challenge the restitution portion of his sentence under § 2255." Dyab v. United States, 855 F.3d 919, 922 (8th Cir. 2017) (citing Shephard v. United States, 735 F.3d 797, 798 (8th Cir. 2013) (per curiam); United States v. Bernard, 351 F.3d 360, 361 (8th Cir. 2003)). This claim is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Movant Donald Havey's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [1] is **DENIED**. An Order of Dismissal will accompany this Memorandum and Order.

**IT IS FUTHER ORDERED** that because Movant cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir.1997), *cert. denied*, 525 U.S. 834 (1998).

Dated this 2nd day of March, 2020.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

10